IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| SPARK CONNECTED, LLC, <br> KEN MOORE, EMANUEL STINGU, <br> And RUWANGA DASSANAYAKE, <br><br> Plaintiffs and Counter-Defendants, <br><br> v. <br><br> SEMTECH CORPORATION, <br><br> Defendant and Counter-Plaintiff. | § § § § § § § § § § § § § Case No. 4:18-cv-748-KPJ |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs and Counter-Defendants Spark Connected, LLC ("Spark"), Ken Moore ("Moore"), Emanuel Stingu ("Stingu"), and Ruwanga Dassanayake's ("Dassanayake") (collectively, "Plaintiffs") Motion for Partial Summary Judgment (the "Motion") (Dkt. 72), to which Defendant and Counter-Plaintiff Semtech Corporation ("Semtech") filed a response (Dkt. 134), and Plaintiffs filed a reply (Dkt. 147). On September 1, 2020, the Court heard oral argument on the Motion (the "Hearing"). *See* Dkt. 332. For the reasons explained below, Plaintiffs' Motion (Dkt. 72) is **DENIED**.

### I.   BACKGROUND

**A. FACTUAL BACKGROUND**

Triune Systems, L.L.C. ("Triune") was a startup company operating in the wireless power technology industry. *See* Dkt. 77 at 2. Moore, along with others, held an ownership interest in Triune and was employed as Vice President of Marketing and Applications. *See id*. On March 4, 2015, Semtech acquired Triune through a Purchase Agreement (the "Purchase Agreement"), which was entered into by Semtech as the "Purchaser," Triune as the "Company," TSEO Holdco, L.L.C.,

1

as the "Seller," and Moore and others as the "Owners" (Moore and others each individually as an "Owner"). *See id.* at 2–3; Dkt. 75-1 at 8. "Seller Parties" are defined collectively in the Purchase Agreement as the "Seller" and the "Owners;" "Seller" and each individual "Owner" are referred to as a "Seller Party." Dkt. 75-1 at 8. Moore received approximately $3 million in sale proceeds under the Purchase Agreement. *See* Dkt. 16 at 4.

The Purchase Agreement defines the "Triune Product Group" as:

> certain unincorporated product group within Semtech that continues the operation of the Business and that, immediately following the Closing, will (A) be run by Ken Moore under the overall supervision of Ross Teggatz, (B) employ all of the current employees of the Group except for Ross Teggatz and David Baldwin (who at Closing will be the VP of Engineering for the division of Semtech containing the Triune Product Group) and, for clarity, excluding any employees whose employment with the Group ceased as of the Closing and who will not be employed by Semtech following the Closing, and (C) operate primarily in Plano, Texas.

Dkt. 75-1 at 19. The Purchase Agreement contains the following restrictive covenant:

> 7.1 <u>Limitations</u>. As a material inducement to Purchaser to enter into this Agreement, each Seller Party covenants and agrees to the following:
>
> (a) <u>Restrictions</u>. For a period of five (5) years beginning with the Closing Date (the "Restriction Period'), such Seller Party shall not, and shall not permit any of the Affiliates of such Seller Party to, directly or indirectly, either alone or in association or in connection with or on behalf of any Person now existing or hereafter created (except on behalf of Purchaser, or the Group or any of their Affiliates): (i) be or become engaged in, or participate in, the business of designing, developing, assembling, manufacturing, producing, testing, delivering, installing, marketing, selling or providing circuit solutions, power system and control semiconductor devices or designs (including firmware), reference designs as related to semiconductor devices or products, or semiconductor products for low power energy harvesting, solar power, wireless charging, isolated switching or any other power management application ("Restricted Business") anywhere in the world (the "Restricted Area"), including being or becoming, directly or indirectly, an organizer, owner, operator, investor, lender, lessor, partner, joint venturer, equityholder, officer, director, employee, manager, representative, associate, advisor, consultant, or agent of, in, to or from any Restricted Business (including by virtue of holding any beneficial interest, or serving as a trustee or in a similar capacity, in any Person that is, directly or indirectly, any of the foregoing or otherwise engaged in any Restricted Business) . . .

(the "Restrictive Covenant") *Id*. at 57. Moreover, according to Section 10.11 of the Purchase Agreement, "No party [to the Agreement] is by virtue of this Agreement authorized as an agent, employee or legal representative of any other party." *Id.* at 75. Finally, the Purchase Agreement states that the "internal laws of the State of Delaware, irrespective of its conflicts of law principles, shall govern the validity of this Agreement, the construction of its terms, and the interpretation and enforcement of the rights and duties of the parties hereto." *Id.* at 72.

After execution of the Purchase Agreement, Moore was employed by Semtech for approximately two years. *See* Dkt. 72 at 3–4; Dkt. 134 at 3, 16. In consideration for his employment at Semtech, Moore signed an Employee Confidentiality Agreement and Proprietary Rights Assessment ("Confidentiality Agreement"), in which he agreed not to "use, disclose, disseminate, or otherwise communicate" Semtech's confidential information to anyone without Semtech's consent. *See* Dkt. 16-2 at 2. The Confidentiality Agreement also contained a non-solicitation provision. *See id*. at 3.

On May 5, 2017, Semtech terminated Moore's employment. *See id*. Following Moore's termination, Moore and Semtech negotiated a separation agreement, entitled Separation and General Release Agreement (the "Separation Agreement"), which was executed on June 16, 2017. *See* Dkt. 72 at 4; Dkt. 134 at 3; Dkt. 75. The Separation Agreement states that it "is entered into by and between Kenneth Moore ("Employee") and Semtech Corporation ("Semtech")." Dkt. 75 at 2. Consideration for Moore's execution of the Separation Agreement included a "Settlement Sum" (defined therein) and a "Legal Fee Payment" (defined therein). *Id.* In turn, the Separation Agreement released Semtech from "any and all waivable claims related to or arising from Employee's employment relationship with Semtech. . . ." Dkt. 75 at 5.

Finally, the Separation Agreement contains a section entitled "Entire Agreement," which

3

states:

> 21. <u>Entire Agreement</u>. This Agreement represents the entire agreement and understanding between Semtech and Employee concerning Employee's employment with and separation from Semtech, and supersedes and replaces any and all prior agreements and understandings concerning Employee's relationship with Semtech and Employee's compensation by Semtech, except that the terms and conditions of any agreement regarding confidentiality of company information previously entered into between Employee and Semtech shall remain in full force and effect.

(the "Integration Clause") *Id.* at 10. The Separation Agreement states that it "shall be governed by the laws of the State of California." *Id.* at 10.

In May 2017, Moore began working with a business partner to develop a connected smartwatch company under the business name of "Spark." *See* Dkt. 72 at 10; Dkt. 134 at 11. Ultimately, Moore and Spark began working on wireless power in earnest, and Spark officially formed as an LLC in September 2017—two and a half years after the Purchase Agreement was executed and within the five-year non-compete provision contained therein. *See* Dkt. 77 at 11–12.

### B. PROCEDURAL HISTORY

Plaintiffs filed suit on October 17, 2018, "seeking a declaratory judgment that [Spark, Moore, Stingu, and Dassanayake] have not breached any agreements with [Semtech] and/or misappropriated trade secrets belonging to [Semtech]." Dkt. 1 at 1. On November 16, 2018, Semtech answered Plaintiffs' complaint and asserted various counterclaims, including a breach of contract claim against Moore for violating the Purchase Agreement. *See* Dkt. 7 at 27.

Semtech filed a Motion for Preliminary Injunction (Dkt. 14) on November 21, 2018, seeking a preliminary injunction "enjoining Moore and Spark from conducting any business that competes with Semtech" in violation of the Purchase Agreement. After holding an evidentiary hearing on May 29, 2019, and May 30, 2019, the Court denied Semtech's Motion for Preliminary Injunction. *See* Dkts. 157, 158, 268.

On April 2, 2019, Plaintiffs filed the Motion. *See* Dkt. 72. On September 10, 2019, Plaintiffs filed an Unopposed Motion to Withdraw in Part Their Motion for Partial Summary Judgment (the "Motion to Withdraw") (Dkt. 269), seeking to withdraw all of the Motion except Section III(B), which "seeks a determination that the restrictive covenants pertaining to [Moore] contained in the Purchase Agreement were superseded by his Separation Agreement." Dkt. 269 at 2. On September 19, 2019, the Court granted Plaintiffs' Motion to Withdraw. *See* Dkt. 270. On October 28, 2019, the Court directed the parties to each file additional briefing regarding choice of law. *See* Dkt. 280. Thus, Plaintiffs filed a Supplemental Brief in Support of the Motion (Dkt. 282), to which Semtech filed a response (Dkt. 285); Semtech filed a Supplemental Brief in Opposition of the Motion (Dkt. 283), to which Plaintiffs filed a response (Dkt. 284).

On December 4, 2019, Plaintiffs filed their Amended Complaint (Dkt. 289). On December 12, 2019, the Court requested a status report regarding the parties' intention to seek rulings on the motions pending before the Court. *See* Dkt. 290. The parties indicated in the status report that they still wished to receive a ruling from the Court on the Motion. *See* Dkt. 291. On September 1, 2020,[1] the Court heard oral argument on the Motion at the Hearing. *See* Dkt. 332.

## II.   LEGAL STANDARD

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Hunt v. Cromartie*, 526 U.S. 541, 549 (1999). The appropriate inquiry is "whether the evidence presents a

---

[1] The Court previously scheduled oral argument regarding the Motion and other pending motions on February 26, 2020, and March 23, 2020, but oral argument had to be rescheduled due to the ongoing COVID-19 pandemic. *See* Dkts. 297, 307, 329.

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). In sustaining this burden, the movant must identify those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The moving party, however, "need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996).

In response, the non-movant "may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255–57). Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record to show there is a genuine issue for trial. *Stults*, 76 F.3d at 655. The citations to evidence must be specific, as the district court is not required to "scour the record" to determine whether the evidence raises a genuine issue of material fact. E.D. Tex. LOCAL R. CV-56(d). Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the nonmovant's burden. *Stults*, 76 F.3d at 655.

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to her case on which she bears the burden of proof

at trial. *Evans v. Texas Dep't of Transp.*, 547 F. Supp. 2d 626, 636 (E.D. Tex. 2007), *aff'd*, 273 F. App'x 391 (5th Cir. 2008) (citing *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322–23.

### III. ANALYSIS

The sole issue before the Court is whether Moore's Separation Agreement superseded the Purchase Agreement. *See* Dkt. 72 at 26. "[T]he interpretation of private contracts is ordinarily a question of state law." *Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989).

#### A. CHOICE OF LAW

In diversity cases, "the forum state of Texas provides the law that governs [] choice-of-law analysis." *Cardoni v. Prosperity Bank*, 805 F.3d 573, 580 (5th Cir. 2015). In the parties' supplemental briefing regarding choice of law, both Plaintiffs and Semtech agree that California law should apply to the interpretation and construction of the Separation Agreement under Texas choice-of-law principles. *See* Dkt. 282 at 1; Dkt. 283 at 2.

The Separation Agreement contains a choice-of-law provision stating that California law should govern its interpretation. *See* Dkt. 75 at 10. In determining whether a choice-of-law provision is enforceable, Texas courts follow the standards set forth in Section 187(2) of the Restatement (Second) of Conflict of Laws, which provides that the law of the chosen state should be applied unless "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy" of the forum state. Restatement

(Second) Conflict of Laws § 187(2); *see Cardoni*, 805 F.3d at 581; *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677–78 (Tex. 1990). As acknowledged by both Semtech and Plaintiffs, Semtech is headquartered in California; hence, California has a substantial relationship to the parties. *See* Dkt. 282 at 2; Dkt. 283 at 4.

Both parties further agree that applying California law is not contrary to any fundamental policy of Texas. *See id.* Both Texas and California courts look to the parties' intent at the time of signing a contract to determine if a contract supersedes an earlier agreement. *See Masterson v. Sine*, 68 Cal.2d 222, 225 (1968); *R. Ready Productions, Inc. v. Cantrell*, 85 F.Supp.2d 672, 694 (S.D. Tex. 2000). Accordingly, the Court concludes California law does not conflict with a fundamental policy of Texas, and thus, should govern the interpretation of the Separation Agreement.

## B.  CONTRACT INTERPRETATION

"The basic goal of contract interpretation is to give effect to the parties' mutual intent at the time of contracting." *Grey v. Am. Mgmt. Services*, 204 Cal.App.4th 803, 806 (2012). "When a contract is reduced to writing, the parties' intention is determined from the writing alone, if possible." *Id.* The words of a contract are to be understood in their ordinary and popular sense. *See id.* at 806–07.

Plaintiffs argue the Separation Agreement superseded the Purchase Agreement, and thus, Moore was no longer bound by the Purchase Agreement's Restrictive Covenant after Semtech terminated his employment. *See* Dkt. 72 at 26–27; Dkt. 282 at 4. Moore specifically claims he agreed to the terms of the Separation Agreement because he believed it superseded the Purchase Agreement, and hence, it was permissible for Moore to continue working in the wireless power industry following his termination. *See* Dkt. 77 at 5–6. Semtech argues the Separation Agreement

did not supersede the Purchase Agreement because the agreements concern different subject matter and involve different parties. *See* Dkt. 283 at 4.

"The crucial issue in determining whether there has been an integration is whether the parties intended their writing to serve as the exclusive embodiment of their agreement. The instrument itself may help to resolve that issue." *Masterson*, 68 Cal.2d at 225. "The existence of an integration clause is a key factor in divining intent." *Grey*, 204 Cal.App.4th at 807 (citing *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal.App.4th 944, 955 (2003)).

Upon review of the Separation Agreement's Integration Clause, the Court concludes the Separation Agreement was not intended to supersede the Purchase Agreement. The language of the Integration Clause states that the Separation Agreement "represents the entire agreement and understanding between Semtech and [Moore] concerning [Moore's] *employment with and separation from* Semtech." Dkt. 75 at 10 (emphasis added). Plaintiffs point to the Integration Clause's statement that it "supersedes and replaces any and all prior agreements and understandings concerning [Moore's] *relationship* with Semtech," as evidence of the parties' intent for the Separation Agreement to supersede the Purchase Agreement. *Id.* However, such an interpretation would render the previous clause's limiting language unnecessary. Under California law, all words in a contract must be given meaning when interpreting a contract. *See* CAL. CIV. CODE § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."). Moreover, Moore is defined as "Employee" for purposes of the Separation Agreement, and the Separation Agreement makes no mention of his position as a "Selling Party" under the Purchase Agreement. Dkt. 75. Thus, the "relationship" mentioned in the Integration Clause appears to be modified by the previous phrase

9

to denote only Moore's employment relationship with Semtech. *See* Dkt. 75 at 10.

Additionally, the Court finds the parties to the agreements are not the same, as Moore and Semtech are the only parties to the Separation Agreement; however, they are only two of nine parties to the Purchase Agreement. *See* Dkt. 75; Dkt. 75-1.

Finally, the Court finds the subject matter of the agreements is not the same, as the Purchase Agreement does not focus on Moore's employment with Semtech. While the Purchase Agreement states that Moore will run the Triune Product Group for Semtech upon closing, the Purchase Agreement does not contain any other term or condition regarding Moore's employment with Semtech. *See* Dkt. 75-1. Moreover, the Purchase Agreement expressly states that it does not authorize any party thereto as an "employee" of any other party to the Purchase Agreement by virtue of the Purchase Agreement. *See id.* 75-1 at 75. Instead, the Purchase Agreement contains seventy (70) pages of terms concerning Semtech's purchase of Triune and several other entities owned by Moore and others. *See id.*

Although the agreements each contain covenants regarding non-solicitation, such covenants cover different time periods; the Purchase Agreement restricts solicitation for five years, and the Separation Agreement restricts solicitation for twelve months. *See* Dkt. 75 at 9; Dkt. 75-1 at 57–58. And while the Separation Agreement expressly states that "the terms and conditions of any agreement regarding the confidentiality of company information previously entered into between Employee and Semtech shall remain in full force and effect," *see* Dkt. 75 at 10, this exception language plainly relates to that contained in the Confidentiality Agreement executed by Moore in consideration of his employment at Semtech, and does not extend to the confidentiality provision, or any other provision, contained in the Purchase Agreement.

The agreements plainly served separate purposes, as the Purchase Agreement was for

consideration of selling various entities (for which Moore received approximately $3 million), and the Separation Agreement was for consideration of a Settlement Sum in exchange for Moore's waiver of all employment-related claims against Semtech. *See* Dkt. 16 at 3–4; Dkt. 75 at 2. Thus, the overall subject matter and context of the Purchase Agreement and Separation Agreement support a finding that the Integration Clause does not supersede the Restrictive Covenant in the Purchase Agreement.

The Court's interpretation of the Integration Clause is consistent with California courts' findings regarding similar integration clauses. *See Oxford Preparatory Academy v. Edlighten Learning Solutions*, 34 Cal.App.5th 605, 611 (2019); *Grey*, 204 Cal.App.4th at 807; *AlterG, Inc. v. Boost Treadmills LLC*, Case No. 18-CV-07568-EMC, 2019 WL 4221599, at *8 (N.D. Cal. Sept. 5, 2019). For example, in *Oxford Preparatory Academy*, the court held that a termination agreement between the parties did not supersede the arbitration provision in the underlying management services agreement between the same parties. *See Oxford Preparatory Academy*, 34 Cal.App.5th at 611. The termination agreement contained an integration clause which states that it "supersedes all prior oral or written negotiations, understandings and agreements with respect to the subject matter hereof." *Id.* As the termination agreement was silent as to dispute resolution and only concerned the parties' consent to cease performance due under the management services agreement, the court found the arbitration agreement was not the "subject matter" of the termination agreement, and thus, was not superseded. *See id.*

Similarly, the Northern District of California found in *AlterG* that a contract concerning the defendant's duties as a consultant did not supersede his previous contract setting forth his rights and obligations as an employee because the two contracts dealt with different subject matter. *See AlterG*, 2019 WL 4221599, at *8. As the Purchase Agreement and Separation Agreement in this

11

matter concern different subject matter and involve different parties, the Court's finding that the Integration Clause does not supersede the Purchase Agreement is consistent with *Oxford Preparatory Academy* and *AlterG*.

In contrast, the court in *Grey* held that a broad arbitration provision contained in a previous employment contract was superseded by a later employment contract that contained a narrower arbitration provision and integration clause. *See Grey*, 204 Cal.App.4th at 213. The integration clause in the second employment contract specified that it was "the entire agreement between the parties in connection with Employee's employment." *Id.* The *Grey* court found that "[b]ecause the contract says it is the entire agreement, common sense dictates that it supersedes other prior agreements related to Grey's employment." *Id.* As the previous contract also concerned Grey's employment, the court found it had been superseded. *See id.* Because the subject matter of the agreements is not the same in this case, however, *Grey* is not inconsistent with the Court's finding.

Plaintiffs argue these California cases are distinguishable, as the integration clauses at issue in these cases were narrower than the Integration Clause at issue in this case. *See* Dkt. 284 at 2. Plaintiffs instead argue the Court should refer to two cases from other jurisdictions to find that the Purchase Agreement was superseded by the Separation Agreement. *See* Dkt. 72 at 28 (citing *Dunn v. Fastmed Urgent Care PC*, 424 P.3d 436, 441 (Ariz. Ct. App. 2018); *Attaway v. Republic Servs. of Ga. LLP*, 558 S.E.2d 846, 848 (Ga. Ct. App. 2002)). As stated above, California law applies to the interpretation of the Separation Agreement. Nevertheless, upon review of *Dunn* and *Attaway*, the Court finds these cases support the Court's conclusion that the Purchase Agreement was not superseded by the Separation Agreement. In *Dunn*, the plaintiff sold his company to the defendant under a purchase agreement, and then later was employed by the defendant. *See Dunn*, 424 P.3d at 37. The defendant subsequently terminated the plaintiff's employment in a termination

12

agreement. When the plaintiff attempted to assert claims against the defendant in a different forum than the forum chosen in the purchase agreement's forum selection clause, the *Dunn* court found that the purchase agreement had not been superseded by the separation agreement's broad integration clause because the purchase agreement and separation agreement concerned different subject matter and involved different parties.[2] *See id*. at 39–41. Similarly, the Court of Appeals of Georgia in *Attaway* held that a covenant not to compete contained in an asset purchase agreement was not superseded by a later covenant not to compete in an employment contract because the contracts concerned different subject matter. *See Attaway*, 558 S.E.2d at 848.

Just as in *Oxford Preparatory Academy*, *AlterG*, *Dunn*, and *Attaway*, the Court finds the Purchase Agreement and the Separation Agreement concern different subject matter. Although the Separation Agreement's Integration Clause does not explicitly state that it only applies to agreements dealing with the same subject matter, it does refer specifically to Moore's "employment with and separation from Semtech," and defines Moore for purposes of the Separation Agreement only as "Employee." Dkt. 75 at 2, 10. The Court thus concludes the terms of the Separation Agreement do not reflect that the parties intended it to supersede the Purchase Agreement.

### IV. CONCLUSION

Based on the foregoing, the Court finds the Separation Agreement does not supersede the Purchase Agreement. Accordingly, Plaintiffs' Motion for Partial Summary Judgment (Dkt. 72) is **DENIED**, and Plaintiffs' claim for a declaratory judgment that the Restrictive Covenant of the Purchase Agreement is no longer enforceable is **DISMISSED**.

---

[2] The integration clause at issue in *Dunn* is considerably broader than the Separation Agreement's Integration Clause, stating: "This Separation Agreement constitutes the full understanding and entire agreement between you and the Company and, when effective, supersedes any other agreements of any kind, whether oral or written, formal or informal." *See Dunn*, 424 P.3d at 39 n.2.

**So ORDERED and SIGNED this 16th day of October, 2020.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE