IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| SPARK CONNECTED, LLC, <br> KEN MOORE, EMANUEL STINGU, <br> And RUWANGA DASSANAYAKE, <br><br> Plaintiffs and Counter-Defendants, <br><br> v. <br><br> SEMTECH CORPORATION, <br><br> Defendant and Counter-Plaintiff. | § <br> § <br> § <br> § <br> § <br> § <br> §    Case No. 4:18-cv-748-KPJ <br> § <br> § <br> § <br> § |

### MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff and Counter-Defendant Ken Moore's ("Moore") Motion to Sever, Stay, and Compel Arbitration of Defendant's Counterclaim for Alleged Breach of Purchase Agreement (the "Motion") (Dkt. 255), to which Defendant and Counter-Plaintiff Semtech Corporation ("Semtech") filed a response (Dkt. 312), and Moore filed a reply (Dkt. 326). On September 1, 2020, the Court heard oral argument on the Motion (the "Hearing"). *See* Dkt. 332. For the reasons explained below, the Motion (Dkt. 255) is **GRANTED**.

### I.  FACTUAL BACKGROUND

Triune Systems, L.L.C. ("Triune") was a startup company operating in the wireless power technology industry. *See* Dkt. 77 at 2. Moore held an ownership interest in Triune, where he served as Vice President of Marketing and Applications. *See id.* On March 4, 2015, Semtech acquired Triune through a Purchase Agreement (the "Purchase Agreement"), which was entered into by Semtech, Triune, Moore, and others. *See* Dkt. 75-1 at 8.

The Purchase Agreement contains a non-compete clause, which restricts Moore and the other selling parties from engaging in the business of:

1

> designing, . . . selling or providing circuit solutions, power system and control semiconductor devices or designs (including firmware), reference designs as related to semiconductor devices or products, or semiconductor products for low power energy harvesting, solar power, wireless charging, isolated switching or any other power management application . . . anywhere in the world.

(the "Restrictive Covenant") *Id.* at 57. Pursuant to the Restrictive Covenant, Moore and the other selling parties must abstain from the prohibited activity for five (5) years from the Purchase Agreement's date of execution. *Id.*

The Purchase Agreement also contains a dispute resolution clause, which provides:

> 10.16 <u>Dispute Resolution</u>. Except as provided in Section 2.5(c), Section 7.2, and Section 10.16(c), any controversy, claim or dispute (including the determination of the scope or applicability of this agreement to arbitrate) ("Controversy") among the parties arising out of or relating to this Agreement will be resolved in accordance with the procedures specified in this Section, which will be the sole and exclusive procedures for the resolution of any such Controversies. The parties intend that these provisions will be valid, binding, enforceable and irrevocable and will survive any termination of this Agreement.
>
> (a) <u>Arbitration</u>. Any Controversy will be submitted to final and binding arbitration with the Judicial Arbitration and Mediation Service ("JAMS") in Los Angeles, California, to be conducted in accordance with the provisions of JAMS' Comprehensive Arbitration Rules and Procedures as in effect at the time of the arbitration. . . . The arbitrators shall have the authority to grant any equitable and legal remedies that would be available in any judicial proceeding instituted in the state and federal courts in Delaware to resolve a disputed matter. . . . An arbitration award rendered pursuant to this Section 10.16 will be final and binding on the parties and may be submitted to a court of competent jurisdiction for entry of a judgment thereon.
>
> . . .
>
> (c) <u>Availability of Equitable Relief</u>. Notwithstanding the parties' agreement to submit all controversies to final and binding arbitration, the parties shall have the right to seek and obtain temporary or preliminary injunction relief or specific performance in any court of competent jurisdiction without the need to post a bond. Such courts shall have authority to, among other things, grant temporary or provisional injunctive relief or specific performance (with such relief effective until the arbitrators have rendered a final award) in order to protect any party's rights under this Agreement or otherwise.

2

(the "Arbitration Clause") *Id.* at 75–77.

After Semtech purchased Triune, it employed Moore for approximately two (2) years. *See* Dkt. 77 at 2–4. On May 5, 2017, Semtech terminated Moore. *See id.* at 4. Following Moore's termination, Moore and Semtech negotiated a separation agreement, entitled Separation and General Release Agreement (the "Separation Agreement"), which was executed on June 16, 2017. *See* Dkt. 75.

In May 2017, Moore began working with a business partner to develop a connected smartwatch company under the business name of "Spark." *See* Dkt. 77 at 7–8. Ultimately, Moore and Spark Connected, LLC ("Spark") began working on wireless power in earnest, and Spark officially formed as an LLC in September 2017. *See id.* at 11–12. Thus, Moore formed Spark two and a half years after the execution of the Purchase Agreement, but before the Restrictive Covenant's five-year limit had passed. *See id.*

## II.  PROCEDURAL HISTORY

Plaintiffs Spark, Moore, Emanuel Stingu, and Ruwanga Dassanayake (collectively, "Plaintiffs") filed suit on October 17, 2018, "seeking a declaratory judgment that Plaintiffs have not breached any agreements with [Semtech] and/or misappropriated trade secrets belonging to [Semtech]." Dkt. 1 at 1. Moore, in particular, sought a declaratory judgment that he had "not breached [the Restrictive Covenant] of his Purchase Agreement with Semtech because that Agreement had been superseded" by the Separation Agreement. *See id.*

On November 16, 2018, Semtech answered Plaintiffs' Complaint and asserted seven (7) counterclaims (the "Counterclaims"), including a breach of contract claim against Moore for violating the Purchase Agreement's Restrictive Covenant. *See* Dkt. 7 at 27. In Plaintiffs' Answer (Dkt. 32) to Semtech's Counterclaims, Moore reiterated his argument that the Separation

3

Agreement superseded the Purchase Agreement and its Restrictive Covenant. *See* Dkt. 32 at 18. Moore made no mention of the Arbitration Clause.

On November 21, 2018, Semtech filed a Motion for Preliminary Injunction (Dkt. 14), wherein Semtech sought to enjoin Moore and Spark "from conducting any business that competes with Semtech" in violation of the Purchase Agreement. *See* Dkt. 14 at 8, 29. That same day, Semtech filed a Motion for Expedited Discovery (Dkt. 22), requesting the Court expedite discovery related to its Motion for Preliminary Injunction, including discovery regarding "[t]he details and timing of Spark's founding," Plaintiffs' involvement in Spark, and "Spark's competition with Semtech in the context of wireless power products and services." Dkt. 22 at 4. On November 30, 2018, Plaintiffs and Spark filed a Joint Stipulation (Dkt. 30), wherein they set a schedule for the expedited discovery and briefing as they related to the Motion for Preliminary Injunction. *See* Dkt. 30 at 2–3.

On January 15, 2019, Plaintiffs filed a Motion to Dismiss Semtech's Counterclaims pursuant to the Texas Citizens Participation Act ("TCPA"), TEX. CIV. PRAC. & REM. CODE § 27.005, including Semtech's claim against Moore for breach of the Purchase Agreement's Restrictive Covenant. *See* Dkt. 35. After the Fifth Circuit held the TCPA does not apply in federal court, *see Klocke v. Watson*, 936 F.3d 240, 242 (5th Cir. 2019), Plaintiffs withdrew their Motion to Dismiss. *See* Dkts. 237, 238. The Motion to Dismiss did not mention the Arbitration Clause.

On March 13, 2019, Plaintiffs filed their First Amended Answer (Dkt. 43) to Semtech's Counterclaims. The First Amended Answer made no mention of the Arbitration Clause.

On April 2, 2019, Plaintiffs filed Plaintiffs' Motion for Partial Summary Judgment (Dkt. 72), seeking summary judgment on Plaintiffs' claims for declaratory judgment and all of Semtech's Counterclaims against Plaintiffs, including the claim that Moore breached the Purchase

Agreement's Restrictive Covenant. *See* Dkt. 72 at 7. Notably, the Motion for Partial Summary Judgment asserted two arguments regarding Moore's prayer for declaratory judgment and Semtech's Counterclaim against Moore for breach of the Purchase Agreement's Restrictive Covenant: (1) the Court should find the Separation Agreement superseded the Purchase Agreement; and (2) if the Court finds the Separation Agreement did not supersede the Purchase Agreement, "any dispute regarding the Purchase Agreement, such as the enforceability of the non-compete clause, must be submitted to arbitration." *Id.* at 26–30, 31 n.3.

On April 4, 2019, Plaintiffs filed their response to Semtech's Motion for Preliminary Injunction (Dkt. 92), wherein Plaintiffs argued the Court should deny Semtech's request for injunctive relief, in part because:

> The parties to the Purchase Agreement specified that arbitration . . . would be the exclusive means of resolving disputes. . . . The parties can seek injunctive relief under Section 10.16(c), but only in support of arbitration.

Dkt. 92 at 35. On May 29, 2019, and May 30, 2019, the Court held a two-day evidentiary hearing regarding the Motion for Preliminary Injunction. *See* Dkts. 157, 158. During the hearing, Plaintiffs reiterated their argument that the Arbitration Clause applies to Semtech's Counterclaim that Moore breached the Purchase Agreement's Restrictive Covenant. *See id.*

On May 8, 2019, Semtech filed an Amended Answer and Counterclaims (Dkt. 131), wherein Semtech continued to assert its claim against Moore for breach of the Restrictive Covenant. *See* Dkt. 131 at 27–28. Plaintiffs filed their Answer to Semtech's Amended Counterclaims (Dkt. 164), wherein Moore made no mention of the Arbitration Clause.

On July 12, 2019, the Court issued the Order Governing Proceedings, wherein the Court scheduled a Rule 16 management conference for August 28, 2019. *See* Dkt. 242. The day before the management conference, on August 27, 2019, Plaintiffs filed the Motion, contending that the

5

Purchase Agreement contains an unambiguous Arbitration Clause under which Semtech's Counterclaim against Moore for breach of the Restrictive Covenant (Count III of Semtech's Amended Counterclaims, Dkt. 131, ¶¶ 60-62, 68) (the "Arbitrable Claim")[1] falls, and requesting the Court compel arbitration of such claim. *See* Dkt. 255.

The Court issued the Scheduling Order on August 30, 2019 (Dkt. 263), and subsequently denied Semtech's Motion for Preliminary Injunction on September 10, 2019. *See* Dkt. 268.

On September 18, 2019, Plaintiffs filed an unopposed motion to withdraw their Motion for Partial Summary Judgment, with the exception of the Court's ruling on "Section III.B, which seeks a determination that the [Restrictive Covenant pertaining to Moore] contained in the Purchase Agreement was superseded by his Separation Agreement." Dkt. 269 at 1–2.

On December 17, 2019, the parties filed a joint motion to stay all deadlines in the case "until resolution of certain pending and anticipated motions on discrete legal issues." Dkt. 292 at 1. Specifically, the parties jointly requested a stay of all case deadlines pending the Court's ruling on Plaintiffs' Motion for Partial Summary Judgment "concerning whether the restrictive covenant not to compete in the Purchase Agreement was superseded and replaced by Moore's Separation Agreement." *Id.* at 2. If the Court found that Moore's Separation Agreement did not supersede and replace the Restrictive Covenant, the parties requested a deadline extension of fourteen (14) days to respond to the Motion after the Court issued its ruling on Moore's Motion for Partial Summary Judgment. *Id.* at 2–3. The Court subsequently granted the parties' request and stayed all case deadlines. *See* Dkt. 298.

---

[1] Count III of Semtech's Counterclaims also include claims that Moore breached the confidentiality provisions of other agreements unrelated to the Purchase Agreement. Moore does not seek to sever or compel arbitration on those claims in Count III. *See* Dkt. 255 at 6 n.6.

On September 1, 2020,[2] the Court heard oral argument on various pending motions, including the non-withdrawn section of Plaintiffs' Motion for Partial Summary Judgment and the Motion. *See* Dkt. 332. On October 16, 2020, the Court denied Plaintiffs' Motion for Partial Summary Judgment, concluding Moore's Separation Agreement did not supersede the Purchase Agreement. *See* Dkt. 336. Because the Court rejected Moore's primary argument—that the Separation Agreement superseded the Purchase agreement—it must address Moore's secondary argument—that the Arbitrable Claim must be submitted to arbitration pursuant to the Arbitration Clause. As explained below, the Court finds Semtech's Counterclaim against Moore for breach of the Purchase Agreement's Restrictive Covenant—the Arbitrable Claim—must be submitted to arbitration.

### III.   LEGAL STANDARD

Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, written arbitration provisions "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* § 2. The FAA provides that a party seeking to enforce an arbitration provision may petition the court for "an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* § 4. "The Fifth Circuit has repeatedly emphasized the strong federal policy in favor of arbitration." *Safer v. Nelson Fin. Corp.*, 422 F.3d 289, 294 (5th Cir. 2005).

Courts perform a two-step inquiry to determine whether arbitration must be compelled. *See Dealer Comput. Servs., Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 886 (5th Cir. 2009). First, the court must determine whether the parties agreed to arbitrate the dispute. *See id.* Second, the

---

[2] The Court previously scheduled oral argument regarding the Motion and other pending motions on February 26, 2020, and March 23, 2020, but oral argument was rescheduled due to the ongoing COVID-19 pandemic. *See* Dkts. 297, 307, 329.

court must determine whether any applicable federal statute, policy, or waiver renders the claims nonarbitrable. *See id.*; *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 577 (5th Cir. 1991). No applicable federal statute or policy is at issue, and waiver is discussed below.

## IV. LEGAL ANALYSIS

### A. VALIDITY OF THE ARBITRATION CLAUSE

Pursuant to the FAA, the Court first determines: (1) whether Moore and Semtech agreed to arbitrate the Arbitrable Claim; and, if so, (2) whether any federal statute, policy, or waiver renders the Arbitrable Claim nonarbitrable. *See* 9 U.S.C. § 2; *Dealer Comput. Servs.*, 588 F.3d at 886; *Walker*, 938 F.2d at 577.

As to the first element, the parties agree that Moore and Semtech agreed to arbitrate the Arbitrable Claim pursuant to the Arbitration Clause set forth in the Purchase Agreement. *See* Dkt. 332. As such, the sole issue before the Court is whether Moore waived his right to arbitrate the Arbitrable Claim.

### B. WAIVER OF ARBITRATION

"[T]he right to arbitration, like any contractual right, may be waived." *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1158 (5th Cir. 1986). However, "[t]here is a strong presumption against finding a waiver of arbitration, and the party claiming that the right to arbitrate has been waived bears a heavy burden." *In re Mirant Corp.*, 613 F.3d 584, 591 (5th Cir. 2010) (citations omitted). Any doubt concerning waiver "should be resolved in favor of arbitration." *Price*, 791 F.2d at 1158 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

A court will deem a party has waived its rights to arbitration if (1) the party seeking arbitration "substantially invokes the judicial process," resulting in (2) "the detriment or prejudice

8

of the other party." *Id.* at 1158 (citations omitted). Accordingly, the question of what conduct constitutes waiver depends on the facts of each case. *See Tenneco Resins, Inc. v. Davy Int'l, AG*, 770 F.2d 416, 420 (5th Cir. 1985).

### *1. Substantial invocation of the judicial process*

To substantially invoke the judicial process, a "party must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 328–29 (5th Cir. 1999). Therefore, "a party only invokes the judicial process to the extent it litigates a specific claim it subsequently seeks to arbitrate." *Id.* at 328.

Semtech argues Plaintiffs' suit, which seeks, in part, declaratory judgment on the Purchase Agreement's validity, "unquestionably invoke[s] the judicial process."[3] *See* Dkt. 312 at 11. Semtech's argument, however, contradicts Fifth Circuit precedent. The Fifth Circuit has held the initial determination of an arbitration agreement's validity neither constitutes a substantial invocation, nor does it constitute a litigation of the arbitrable dispute such that waiver has occurred. *See Gen. Guar. Ins. Co. v. New Orleans Gen. Agency, Inc.*, 427 F.2d 924, 928 (5th Cir. 1970); *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 345 (5th Cir. 2004). Moore's request for declaratory judgment regarding the Purchase Agreement is limited to a finding that the Separation Agreement superseded the Purchase Agreement. *See* Dkt. 1 at 10; Dkt. 105 at 14; Dkt. 289 at 18. As such, Moore's initiation of the lawsuit does not constitute a waiver of his right to arbitration.

Next, Semtech points to Moore's Answers, participation in discovery, and two dispositive

---

[3] Semtech incorrectly asserts "Moore's Motion concedes that he invoked the judicial process." Dkt. 312 at 11. To the contrary, Moore's Motion states, "Moore never invoked the judicial process to determine any claim under the Purchase Agreement." Dkt. 255 at 7.

motions to argue Moore substantially invoked the judicial process. *See* Dkt. 312 at 4–5, 11. Explained below, these acts do not constitute a substantial invocation.

*(a) Plaintiffs' Answers to Semtech's Counterclaims*

The Fifth Circuit has indicated answers that do not raise arbitration as an affirmative defense will not, by itself, result in waiver. *See Mirant*, 613 F.3d at 591 ("[T]he mere failure to assert the right to demand arbitration does not alone translate into waiver of that right."). Other federal courts of appeals and federal district courts have so similarly held. *See J & S Const. Co., Inc. v. Travelers Indem. Co.*, 520 F.2d 809, 809–10 (1st Cir. 1975) (holding no waiver when answer did not raise arbitration defense); *Rush v. Oppenheimer & Co*, 779 F.2d 885, 889 (2d Cir. 1985) ("[T]he bare fact that defendants filed an answer is inadequate by itself to support a claim of waiver of arbitration."); *Zenol, Inc. v. Carblox, Ltd.*, 334 F. Supp. 866, 869 (W.D. Pa. 1971), *aff'd without opinion*, 474 F.2d 1338 (3d. Cir. 1973) (same); *Carolina Throwing Co. v. S & E Novelty Corp.*, 442 F.2d 329, 331–32 (4th Cir. 1971) (noting waiver "may not rest mechanically on some act such as the filing of a complaint or answer"); *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 698 (9th Cir. 1986) (same); *Bates v. Laminack*, 969 F. Supp. 2d 772, 775–77 (S.D. Tex. 2012) (same), *vacated on other grounds*, No. 2:12-cv-387, 2014 WL 3749771 (S.D. Tex. July 29, 2014); *Griffin v. Senior Living Props., LLC*, No. 6:17-190, 2017 WL 3721989, at *3 (E.D. Tex. Aug. 29, 2017) (finding no waiver when answer and amended complaint lacked arbitration defense); *Clark v. Nordstrom, Inc.*, No. 3:18-cv-2100-D, 2019 WL 3428947, at *4–5 (N.D. Tex. July 30, 2019) (same).

To date, Plaintiffs have filed an Answer to Semtech's Counterclaims (Dkt. 32), a First Amended Answer (Dkt. 43) to Semtech's Counterclaims, and an Answer to Semtech's Amended Counterclaims (Dkt. 164). In all three filings, Plaintiffs did not assert arbitration as an affirmative

10

defense or otherwise raise the issue of arbitration as to the Arbitrable Claim.

As the cases above demonstrate, Plaintiffs' Answers do not compel a finding of waiver. To be sure, Moore could have preserved his arbitration rights by asserting arbitration as a defense in each Answer. Thus, the absence of an arbitration defense in three filings could, theoretically, "evince a desire" to resolve the Arbitrable Claim through litigation. *Subway Equip. Leasing Corp.*, 169 F.3d at 329. However, waiver cannot "rest mechanically on some act such as the filing of a complaint or answer." *Carolina Throwing Co.*, 442 F.2d at 332. The question of what conduct constitutes waiver depends on the facts of each case. *See Tenneco Resins*, 770 F.2d at 420.

Evaluated in its full context, Plaintiffs filed their Answers in response to Semtech's conduct. Semtech's Counterclaims originally alleged Plaintiffs misappropriated thirty-one (31) trade secrets. *See* Dkt. 7 (asserting Counterclaims); Dkt. 21 (listing thirty-one (31) trade secrets). Later, Semtech reduced the alleged trade secrets to twelve (12). *See* Dkt. 134 at 30–35. To date, only four (4) alleged trade secrets remain. *See* Dkt. 170 at 5; Dkt. 187 at 15; Dkt. 289 at 9. As this lawsuit developed, Moore's pleadings became moot, compelling him to file amended Answers or risk admitting disputed facts and potentially incurring a default judgment. *See Gen. Guar. Ins. Co.*, 427 F.2d at 929 (noting a party "had to" file an answer or suffer default judgment). Thus, filing two amended Answers in response to amended Counterclaims and other litigation developments does not "evince a desire" to resolve the claim in court in lieu of arbitration. *Subway Equip. Leasing Corp.*, 169 F.3d at 329.

*(b) Discovery*

As an initial matter, the Purchase Agreement allows the parties to seek injunctive relief in a court of competent jurisdiction, notwithstanding the Arbitration Clause. *See* Dkt. 75-1 at 76-77. If the parties agreed the Court could provide injunctive relief despite the Arbitration Clause, it

follows that Moore and Semtech agreed they could engage in discovery relating to a preliminary injunction without fear of waiving any arbitration rights. Accordingly, even though the Preliminary Injunction resulted in some discovery with respect to the Arbitrable Claim, the discovery primarily concerned a separate legal issue: whether Semtech would suffer irreparable harm if Plaintiffs continued to operate in the wireless charging industry. *See* Dkt. 267. The discovery only incidentally involved the Arbitrable Claim. *Cf. Tenneco*, 770 F.2d at 421 ("[W]hen only a minimal amount of discovery has been conducted, which may also be useful for the purpose of arbitration, the court should not ordinarily infer waiver."). The Arbitrable Claim's incidental relationship to the discovery does not constitute a substantial invocation.

It is also important to note the discovery taken thus far—the production of documents, interrogatories, and depositions—resulted *because of* Semtech. *See* Dkts. 22, 22-2, 22-6, 30, 95-26, 95-28. The standard is whether a party seeking arbitration's "overt act" will substantially invoke the judicial process. *Subway Equip. Leasing Corp.*, 169 F.3d at 329. Here, Semtech filed the Motion for Preliminary Injunction, not Moore. Consequently, Moore was compelled to participate in discovery in order to defend himself from, "in effect, shutter[ing] Spark's operation" and terminating his own employment for thirty-three (33) months. Dkt. 267 at 19. It cannot fairly be said that Moore's participation in discovery constituted an "overt act evinc[ing] a desire" to litigate the Arbitrable Claim. *Subway Equip. Leasing Corp.*, 169 F.3d at 329.

Further, in Semtech's response to Plaintiffs' Motion for Partial Summary Judgment related to the Purchase Agreement, Semtech argues that Plaintiffs' motion "is premature because it has not had the opportunity to conduct full discovery." Dkt. 134 at 24. Specifically, Semtech argued:

> **[T]he amount and scope of the expedited discovery was limited and targeted to specific issues raised by [Semtech's Motion for Preliminary Injunction]**. For example, the number of written interrogatories and document requests was limited, depositions were limited to 3.5 hours for an individual and a total of 4 hours for

>corporate representatives, and no third-party discovery was permitted. Additionally, the Court's Order cancelled the Rule 16 Management Conference that had been set. As a result, **the parties have not conferred on a discovery plan under Rule 26(f),** no Rule 16 Management Conference has taken place, and no scheduling order has issued.

*Id.* at 25 (citations omitted) (emphasis added). Consistent with Semtech's argument above, discovery thus far has been limited to Semtech's Motion for Preliminary Injunction, and has since been stayed pursuant to the joint request of the parties pending the Court's ruling on the Motion. *See* Dkt. 298.

    *(c) Moore's dispositive motions*

Thus far, Moore has filed two dispositive motions—a Motion for Partial Summary Judgment (Dkt. 72) and a Motion to Dismiss (Dkt. 35). As stated above, Moore sought partial summary judgment with respect to a preliminary issue: whether the Separation Agreement superseded the Purchase agreement. Because the Motion for Partial Summary Judgment merely asked the Court to make an initial determination of the Arbitration Clause's validity, *see supra* Part IV.A, it does not substantially invoke the judicial process as to the Arbitrable Claim.

Likewise, Moore's Motion to Dismiss did not substantially invoke the judicial process. In *Mirant*, the Fifth Circuit held a defendant does not substantially invoke the judicial process merely by filing a motion to dismiss based on an affirmative defense. *See* 613 F.3d at 589. The court noted "[m]otions to dismiss are not homogeneous," and some motions to dismiss "may not be inconsistent with a right to arbitrate; it might be necessary for the defendant to file a motion to sort out the claims before it can intelligently decide whether to arbitrate and protect its rights in court if the arguably non-arbitrable claims do turn out to be non-arbitrable." *See id.* at 589, 591; *Steel Warehouse Co. v. Abalone Shipping Ltd. of Nicosai*, 141 F.3d 234, 238 (5th Cir. 1998) (holding no waiver because party seeking arbitration did not do "much other than defend themselves" and

13

had not "showered [the opponent] with interrogatories and discovery requests").

Here, Plaintiffs sought dismissal of Semtech's Counterclaims, including the Arbitrable Claim, under the TCPA. *See* Dkt. 35. The Motion to Dismiss is not, however, inconsistent with Moore's right to arbitrate. Similar to the threshold issue raised in Moore's Motion for Partial Summary Judgment, if Moore prevailed on his procedural TCPA argument, then the Court need not have reached the issue of Moore's right to arbitrate. Accordingly, Moore's filing of a Motion to Dismiss is not inconsistent with his desire to resort to arbitration.

Moreover, when Moore filed his Motion to Dismiss, the Fifth Circuit was considering the TCPA's applicability in federal court; thus, the Court extended Semtech's deadline to file its response to Moore's Motion to Dismiss pursuant to the parties' Joint Stipulation Extending Time to Respond to Motion to Dismiss (Dkt. 40). *See* Dkt. 41. Ultimately, the Fifth Circuit held the TCPA inapplicable in federal court, *see Klocke*, 936 F.3d at 242, and Semtech was not required to respond or otherwise defend against the Motion to Dismiss. Subsequently, Plaintiffs withdrew their Motion to Dismiss. *See* Dkts. 237, 238.

The Court is not persuaded that Plaintiffs' Motion to Dismiss constitutes an "overt act" that is "inconsistent" with Moore's rights under the Arbitration Clause. To the extent any doubt exists, the U.S. Supreme Court and the Fifth Circuit have instructed the Court to resolve it in favor of arbitration. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25; *Price*, 791 F.2d at 1158; *see also Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*, No. H-11-2745, 2012 WL 5373462, at *5 (S.D. Tex. Oct. 30, 2012) ("Courts generally hesitate to find waiver in all but the clearest cases due to the strong presumption of enforceability.") (citations omitted). Thus, the Court finds no substantial invocation of the judicial process.

### 2. *Prejudice*

Even if Moore substantially invoked the judicial process with respect to the Arbitrable Claim, Semtech has failed to demonstrate prejudice.

"For purposes of a waiver of an arbitration agreement: 'prejudice' refers to the inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Republic Ins. Co.*, 383 F.3d at 346 (internal quotations omitted). Courts consider three factors when determining prejudice: the discovery undertaken with respect to the arbitrable claim; the time and expense the non-movant incurred in litigating the arbitrable claim; and the moving party's failure to timely assert its right to arbitrate a dispute. *See id.* The Court addresses discovery, time and expense, and delay in turn.

### (a) *Discovery*

Moore's participation in discovery did not prejudice Semtech. In *Price*, the Fifth Circuit held "pretrial discovery relating to nonarbitrable subject matter cannot prejudice a party opposing arbitration." 791 F.2d at 1159. To date, the scope of the parties' discovery has been limited to Semtech's Motion for Preliminary Injunction, which the Arbitration Clause permitted. *See* Dkts. 22-2, 22-6, 30, 95-2, 95-26, 95-28. Put simply, Semtech has not experienced prejudice resulting from discovery activity related to Semtech's Motion for Preliminary Injunction, regardless of how extensive such discovery was.

### (b) *Time and expense of litigation*

For similar reasons, Semtech cannot argue the time it has spent and the expenses it has incurred in this lawsuit to date amount to prejudice. Most of this litigation's activity is the result of Semtech's actions. First, Semtech filed seven (7) Counterclaims against Plaintiffs and

subsequently amended them. *See* Dkts. 7, 131. This prompted Plaintiffs to file their Answer, Amended Answers, and Motion for Partial Summary Judgment. Second, Semtech filed the Motion for Preliminary Injunction, which spurred further litigation activity. *See* Dkt. 14. Thus, to the extent Semtech expended time and resources with respect to these filings, such expenditures did not prejudice Semtech.

Semtech argues, "[I]f Moore timely sought arbitration, Semtech would not have incurred costs responding to Moore's . . . motion for partial summary judgment." Dkt. 312 at 17. To the contrary, Semtech's response to Plaintiffs' Motion for Partial Summary Judgment regarding the Arbitrable Claim is limited to one and a half pages of its thirty-seven-paged brief. *See* Dkt. 134 at 27–28. Moreover, Semtech's argument only responds to whether Moore's Separation Agreement superseded the Purchase Agreement; Semtech's argument was silent as to the Arbitrable Claim. *See id.*

With respect to Plaintiffs' Motion to Dismiss, Semtech need not have expended more than cursory resources. Because the Fifth Circuit held the TCPA did not apply in federal court, Semtech was not required to respond the motion.

*(c) Delay*

Lastly, Moore's delay in compelling arbitration has not prejudiced Semtech. Semtech is correct to note that, over the course of approximately seven (7) months, Moore's Answers failed to assert arbitration as an affirmative defense or otherwise assert the Arbitration Clause applied to the Arbitrable Claim. However, delay in demanding arbitration does not automatically result in waiver of a party's right to arbitrate. *See Tenneco Resins*, 770 F.2d at 421 (no waiver even though party waited eight (8) months to demand arbitration); *Walker*, 938 F.2d at 578 (holding no waiver even though party waited thirteen (13) months to demand arbitration); *see also supra* Part. IV.B

(discussing delay under substantial invocation prong).

Here, Moore first raised his right to arbitrate five (5) months after Semtech asserted the Counterclaim. *See* Dkt. 72 at 31 n.3. Moore moved to compel arbitration less than five (5) months later—before a scheduling order had been entered in the case. Dkt. 255. The Court finds the timing alone does not support a finding of prejudice.

Nor can Semtech argue Moore's delay, within the context of the case's progress, has prejudiced Semtech. A party who extensively litigates his case, only to move to compel arbitration later, will prejudice the party opposing arbitration. *See Mirant*, 613 F.3d at 590 (noting prejudice results when party delays moving to compel arbitration after ascertaining "how the case [is] going in federal district court"); *Petrol. Pipe Am. Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 482 (5th Cir. 2009) (noting prejudice results when a party seeks to relitigate an issue through arbitration) (citation omitted). Here, the Arbitrable Claim is in its early stages of litigation. *See In re Apple iPhone 3G & 3GS MMS Mktg. & Sales Practices Litig.*, 864 F. Supp. 2d 451, 457 (E.D. La. 2012) (finding no waiver in part because, "despite the fact that this case is over two years old, this litigation is still in its early stages").

In fact, Semtech filed a joint motion to stay all discovery deadlines "until resolution of certain pending and anticipated motions on discrete legal issues." Dkt. 292 at 1. On February 13, 2020, the Court granted the parties' joint motion and stayed all deadlines in its Scheduling Order (Dkt. 263), *see* Dkt. 307, thereby halting discovery and litigation with respect to the Arbitrable Claim. Because of the stay, Moore has not had an opportunity to engage in the kind of "first bite at the apple in federal court," and "a second bite at the apple in arbitration" conduct that would prejudice Semtech. *See Mirant*, 613 F.3d at 590.

## V. CONCLUSION

Based on the foregoing, the Court finds that Moore's Motion to Sever, Stay, and Compel Arbitration of Defendant's Counterclaim for Alleged Breach of Purchase Agreement (Dkt. 255) is hereby **GRANTED**. Accordingly, the portion of Semtech's breach of contract claim against Moore regarding Moore's alleged breach of the Purchase Agreement's Restrictive Covenant (Count III of Semtech's Amended Counterclaims, Dkt. 131, ¶¶ 60-62, 68) is hereby stayed and compelled to arbitration.

**So ORDERED and SIGNED this 10th day of November, 2020.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE